IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 3, 1999 Session

## IN RE: ESTATE OF PAULINE MADDOX

**Appeal from the Chancery Court for Sumner County**
**No. 96P-11     Tom E. Gray, Chancellor**

---

**No. M1998-00925-COA-R3-CV - Filed May 9, 2001**

---

This appeal involves the testamentary intent of an 89-year-old widow who died leaving a sizeable estate. After one of the decedent's grandsons, acting as her executor, submitted for probate a February 1991 will and a June 1995 codicil, the decedent's surviving daughter filed a will contest proceeding in the Chancery Court for Sumner County, alleging that the will had been procured by the executor's undue influence and that the distribution of the estate should be governed by a 1989 holographic instrument. Following a bench trial, the trial court upheld the validity of the 1991 will and the 1995 codicil. On this appeal, the decedent's daughter asserts that the trial court erred by determining that the 1991 will and the 1995 codicil expressed the decedent's testamentary wishes rather than the 1989 document. We have determined that the evidence supports the trial court's conclusions and, therefore, affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Wm. Kennerly Burger, Murfreesboro, Tennessee, for the appellant, Dorothy V. Maddox Wilson.

Philip C. Kelly and Gwynn K. Smith, Gallatin, Tennessee, for the appellees, Joe Whitaker and Allen Whitaker.

### OPINION

Pauline Maddox was a lifelong resident of Sumner County. She and Howard Maddox, her husband, had two daughters, Polly Maddox Whitaker and Dorothy Virginia Maddox Wilson. Mr. Maddox died in the late 1980s, and Ms. Whitaker died of cancer in 1989. After Ms. Whitaker died, Ms. Maddox's grandsons, Joe H. Whitaker, Sr. and Allen Whitaker, lived with her for several years and thereafter remained devoted to Ms. Maddox for the rest of her life. Ms. Maddox had a great deal of affection for the rest of her family, especially Ms. Wilson and her three children, but Joe Whitaker and Allen Whitaker held a special place in her heart.

As Ms. Maddox grew older, she relied on both Joe Whitaker and Allen Whitaker to assist her with her business affairs and errands. After Allen Whitaker moved to Kentucky in the late 1980s, Ms. Maddox relied increasingly on Joe Whitaker, who lived in Gallatin where he worked as a real estate broker. Even though she remained capable of driving until the last year of her life, Ms. Maddox frequently asked Joe Whitaker to drive her wherever she needed to go.

Ms. Maddox remained alert and fairly independent, even when her health began to decline during the last years of her life. Until her death, Ms. Maddox lived in her own home with the assistance of someone who would help with the cooking and the other household chores. Joe Whitaker became concerned about Ms. Maddox's safety and tried to persuade her to hire a live-in nurse who would be there at night in the event of an emergency. However, Ms. Maddox insisted that she was capable of living alone and refused to hire a full-time care giver.

Ms. Maddox also sought Joe Whitaker's advice and assistance with her financial affairs. She placed his name on her checking account and several certificates of deposit and savings accounts. She often asked him to write and sign checks for her, even though she insisted on maintaining her own checkbook and financial records. In the late 1980s, and again in 1994 and 1995, Ms. Maddox gave Joe Whitaker general powers of attorney, just as her husband had done before he died. Joe Whitaker never exercised these powers for either of his grandparents.

In addition to managing her daily financial affairs, Ms. Maddox began to be concerned about the distribution of her estate. In the early 1990s, she retained Ronnie Fox, a certified public accountant who did work for Joe Whitaker, to prepare her income tax returns. Later, on at least two occasions, Ms. Maddox talked with Mr. Fox about ways to minimize the taxes on her estate. She also discussed estate planning matters with Charles Hill Beaty, a lawyer practicing in Gallatin who also attended her church. Mr. Beaty had represented Joe Whitaker in several business transactions. In 1994, at Ms. Maddox's request, Mr. Beaty also represented Ms. Wilson in the divorce proceedings that ended her 45-year marriage. When Ms. Maddox desired to meet with Mr. Beaty, Joe Whitaker would set up the meetings but would not attend them. Joe Whitaker never discussed Ms. Maddox's testamentary plans with Mr. Beaty.

Ms. Maddox eventually asked Mr. Beaty to prepare her will. She explained that she desired that her estate be divided among her surviving daughter, her grandchildren, and her great-grandchildren. She specifically instructed Mr. Beaty that she wanted Joe Whitaker and Allen Whitaker to have her one-half interest in the family farm. She was also concerned about Ms. Wilson's ability to manage her finances because of her marital difficulties and her struggle with alcohol abuse. Accordingly, Ms. Maddox informed Mr. Beaty that she was interested in placing Ms. Wilson's share of the estate in a trust to prevent it from being squandered.

Mr. Beaty assigned the task of drafting Ms. Maddox's will to an associate, Sue Hynds Dunning. Ms. Dunning drafted Ms. Maddox's will based on Mr. Beaty's notes of his conversation with Ms. Maddox and did not interview Ms. Maddox further. On February 21, 1991, Ms. Dunning assisted Ms. Maddox with the execution of her will. She explained each section of the will to Ms.

Maddox, and Ms. Maddox expressed her assent to the will and signed the instrument in the presence of two witnesses. In addition to specific gifts of personal property and cash, Ms. Maddox's will devised her interest in the family farm to Joe Whitaker and Allen Whitaker and gave any of her grandsons the opportunity to purchase her home and adjoining property from the estate. The will also created a $250,000 trust for the benefit of Ms. Wilson and directed Joe Whitaker, as trustee, to pay Ms. Wilson one-tenth of the trust estate every year for ten years.[1] Finally, the will provided for gifts to Joe Whitaker and Allen Whitaker of $185,000 each or one-half of all the funds remaining after the creation of the trust for Ms. Wilson.

Four years later, Ms. Maddox contacted Ms. Dunning seeking advice about the tax consequences of some inter vivos gifts she was considering. Ms. Dunning was no longer practicing with Mr. Beaty and was then representing Joe Whitaker in his divorce proceedings. Because one of Ms. Maddox's concerns was that Joe Whitaker's wife would have access to her gifts, Ms. Dunning recommended that Ms. Maddox retain Mr. Beaty to prepare the necessary codicil to her February 1991 will. Ms. Maddox responded, "[n]o, little girl, I like you. I want you to do it. Now go ahead and get it done." Accordingly, Ms. Dunning prepared a codicil to the February 1991 will, and Ms. Maddox executed the codicil on June 12, 1995. The codicil contained specific directions regarding several items of personal property and reduced the amount of her bequests to Ms. Wilson's three sons. Neither Joe Whitaker, Allen Whitaker, nor Ms. Wilson were aware of Ms. Maddox's plan for the distribution of her estate.

Ms. Maddox died on Thanksgiving Day in 1995 at the age of eighty-nine. She left an estate estimated to be worth $956,000. In January 1996, Joe Whitaker filed a petition in the Sumner County Probate Court to probate Ms. Maddox's February 1991 will and the June 1995 codicil. In August 1996, Ms. Wilson filed a complaint in the Chancery Court for Sumner County contesting the validity of both the will and the codicil on the ground that they had been procured by Joe Whitaker and Allen Whitaker through undue influence and in abuse of Joe Whitaker's confidential relationship with Ms. Maddox. Ms. Wilson also asserted that a handwritten document prepared by Ms. Maddox on October 10, 1989 was her mother's holographic will.[2] Both Joe Whitaker and Allen Whitaker admitted that Joe Whitaker had a confidential relationship with Ms. Maddox but denied that they had attempted to influence her testamentary decisions.

At the conclusion of a hearing on February 18, 1998, the trial court upheld Ms. Maddox's February 1991 will and the June 1995 codicil. The court concluded that Joe Whitaker had a confidential relationship with Ms. Maddox at the time these instruments were prepared but that he had presented sufficient evidence to clearly and convincingly rebut the presumption of undue

---

[1] The will also provided that if Ms. Wilson were to die during the ten-year term of the trust, her three sons should receive equal shares of the balance remaining in the trust.

[2] This document appears to be a list of Ms. Maddox's property. Each entry is followed by the name of one of Ms. Maddox's relatives – presumably to indicate that Ms. Maddox intended to leave the property to the identified relative. The most significant distinction between this document and the February 1991 will and the June 1995 codicil is that the handwritten list does not set up a trust for Ms. Wilson.

influence arising from the existence of that relationship. The trial court also concluded that the handwritten October 1989 document was not a holographic will. On February 25, 1998, the trial court entered an order dismissing the will contest. Ms. Wilson filed a Tenn. R. Civ. P. 59.04 motion to alter or amend the judgment based on a tape recording she secretly made during a meeting with Ms. Dunning in December 1995. On June 8, 1998, the trial court entered an order finding that the tape recording did not contradict Ms. Dunning's testimony and denying Ms. Wilson's motion.

## I.
### THE FEBRUARY 1991 WILL AND THE JUNE 1995 CODICIL

Ms. Wilson's chief argument on this appeal is that the trial court erred by upholding Ms. Maddox's February 1991 will and the 1995 codicil. She asserts that Joe Whitaker did not present clear and convincing evidence to rebut the presumption of undue influence arising from his admitted confidential relationship with Ms. Maddox during the last five years of her life. We disagree, and, like the trial court, we have concluded that Joe Whitaker has successfully rebutted any presumption of undue influence that may have arisen from the evidence presented by Ms. Wilson.

### A.

The purpose of a will contest is to have a will declared void either because the testator lacked the requisite testamentary capacity or because the will was procured by undue influence or fraud. *Stacks v. Saunders*, 812 S.W.2d 587, 590-91 (Tenn. Ct. App. 1990); *Muse v. Sluder*, 600 S.W.2d 237, 240 (Tenn. Ct. App. 1980). It is an in rem proceeding, *Lillard v. Tolliver*, 154 Tenn. 304, 323, 285 S.W. 576, 581-82 (1926), intended to test the external validity of the will. *Stacks v. Saunders*, 812 S.W.2d at 590; *Rogers v. Russell*, 733 S.W.2d 79, 84 (Tenn. Ct. App. 1986). The proceeding is now regulated entirely by statute. *Jones v. Witherspoon*, 182 Tenn. 498, 503-04, 187 S.W.2d 788, 790 (1945); *Cude v. Culberson*, 30 Tenn. App. 628, 637, 209 S.W.2d 506, 511 (1947).

In a will contest, the proponents of a will have the initial burden of proving that the will was executed in compliance with all legal formalities. *In re Estate of Elam*, 738 S.W.2d 169, 171 (Tenn. 1987). Proof of due execution makes out a prima facie case for the will's validity because it gives rise to the presumption that the testator was capable of making a will. *Curry v. Bridges*, 45 Tenn. App. 395, 407, 325 S.W.2d 87, 92 (1959); *Needham v. Doyle*, 39 Tenn. App. 597, 622, 286 S.W.2d 601, 612 (1955). Thus, proof of due execution shifts the burden to the contestants to prove that the testator was unduly influenced in making his or her will. *In re Estate of Elam*, 738 S.W.2d at 171; *Green v. Higdon*, 870 S.W.2d 513, 520 (Tenn. Ct. App. 1993).

While undue influence may be proved either by direct or circumstantial evidence, direct evidence of undue influence is rarely available. Accordingly, in most cases, those challenging the validity of a will on the ground that it was procured by undue influence must prove the existence of suspicious circumstances warranting the conclusion that the person allegedly influenced did not act freely and independently. *Fell v. Rambo*, 36 S.W.3d 837, 847 (Tenn. Ct. App. 2000); *Mitchell v. Smith*, 779 S.W.2d 384, 388 (Tenn. Ct. App. 1989). Whether the suspicious circumstances relied

upon by the contestants are sufficient to invalidate a will should be "decided by the application of sound principles and good sense." *Halle v. Summerfield*, 199 Tenn. 445, 454, 287 S.W.2d 57, 61 (1956).

The courts have not attempted to catalogue the types or number of suspicious circumstances needed to invalidate a will, but the scope of relevant evidence is quite broad. 1 Jack W. Robinson & Jeff Mobley, *Pritchard on the Law of Wills and the Administration of Estates* § 130, at 209-30 (5th ed. 1994). The suspicious circumstances most frequently relied upon to establish undue influence are: (1) the existence of a confidential relationship between the testator and the beneficiary, (2) the testator's physical or mental deterioration, and (3) the beneficiary's active involvement in procuring the will. *In re Elam's Estate*, 738 S.W.2d at 173; *Kelly v. Allen*, 558 S.W.2d 845, 848 (Tenn. 1977). Other circumstances include: (1) secrecy concerning the will's existence, (2) the unjust or unnatural nature of the will's terms, (3) discrepancies between the will and the testator's expressed intentions, and (4) fraud or duress directed toward the testator. *Mitchell v. Smith*, 779 S.W.2d at 388.

Proof of the existence of a confidential relationship, by itself, will not be sufficient to invalidate a will. *Halle v. Summerfield*, 199 Tenn. at 455, 287 S.W.2d at 61; *Vantrease v. Carl*, 56 Tenn. App. 636, 642-43, 410 S.W.2d 629, 632 (1966). It is not the relationship that concerns the courts but rather the abuse of the relationship. *Robinson v. Robinson*, 517 S.W.2d 202, 206 (Tenn. Ct. App. 1974). Proof of the existence of a confidential relationship must be coupled with evidence of one or more other suspicious circumstances that give rise to a presumption of undue influence. Accordingly, proof that a beneficiary had a confidential relationship, such as an unrestricted power of attorney, coupled with evidence of a transaction or gift to the beneficiary creates a presumption of undue influence. *Matlock v. Simpson*, 902 S.W.2d 384, 386 (Tenn. 1995); *Johnson v. Craycraft*, 914 S.W.2d 506, 510 (Tenn. Ct. App. 1995).

Once a contestant presents sufficient evidence to substantiate its undue influence claim, the burden of going forward shifts back to the will's proponent to prove by clear and convincing evidence that the challenged transaction or gift was fair. *Matlock v. Simpson*, 902 S.W.2d at 386; *Hager v. Fitzgerald*, 934 S.W.2d 668, 671 (Tenn. Ct. App. 1996); *Bills v. Lindsay*, 909 S.W.2d 434, 440-41 (Tenn. Ct. App. 1993). Like the proof of suspicious circumstances, the scope of the evidence regarding the fairness of a transaction or gift is quite broad. Frequently, a will's proponents prove the fairness of a transaction by presenting evidence that the testator received independent advice. *Matlock v. Simpson*, 902 S.W.2d at 386; *Richmond v. Christian*, 555 S.W.2d 105, 107-08 (Tenn. 1977). However, proof of independent advice becomes necessary only when it would be difficult to show the fairness of the transaction or the competency of the testator without it. *In re Depriest's Estate*, 733 S.W.2d 74, 79 (Tenn. Ct. App. 1986).

**B.**

Joe Whitaker, in his role as the executor of Ms. Maddox's estate, presented satisfactory evidence that Ms. Maddox duly executed her February 1991 will and the June 1995 codicil.

Accordingly, the burden then shifted to Ms. Wilson to prove the existence of sufficient suspicious circumstances to call the validity of the will and codicil into question. Ms. Wilson attempted to carry her burden by proving: (1) that Joe Whitaker had a confidential relationship with Ms. Maddox, (2) that Ms. Maddox received all her estate planning advice from two lawyers and an accountant who had also provided professional services to Joe Whitaker; and (3) that the terms of the February 1991 will and the June 1995 codicil differed materially from Ms. Maddox's October 1989 handwritten inventory of her property.

All the parties agree that Joe Whitaker had a confidential relationship with Ms. Maddox for approximately the last five years of her life. She had given him her power of attorney, and while he may never have exercised it, there is no question that Ms. Maddox relied on Joe Whitaker for assistance with her personal and financial affairs. However, proof of the existence of a confidential relationship will not, by itself, provide grounds to invalidate a will. Thus, for Ms. Wilson to succeed, she must establish other suspicious circumstances which, "by the application of sound principles and good sense" would cause reasonable persons to conclude that Ms. Maddox's will and codicil did not reflect her own testamentary intent. Having reviewed the record, we find that Ms. Wilson's evidence of other suspicious circumstances is wafer thin.

By all accounts, Ms. Maddox was an "independent," "strong-willed," and "feisty" woman up until the time she died. She was described as being very determined and not controlled by anyone. All who testified stated that she was knowledgeable about her personal finances and that she had clear ideas about how she wanted her property distributed after her death. Allen Whitaker explained that Ms. Maddox "gave everything that she did serious consideration." Thus, while Ms. Maddox may have become physically unfirm, there is no evidence in this record that her age or her physical infirmities had diminished her spirit or her mental acuity.

Ms. Wilson places great emphasis on the fact that Ms. Maddox obtained estate planning assistance from persons who had also provided professional services to Joe Whitaker in matters having no relationship with Ms. Maddox's will. She stresses this point because of her erroneous belief that Ms. Maddox's February 1991 will and the June 1995 codicil can be upheld only if there is clear and convincing evidence that Ms. Maddox received independent advice regarding the disposition of her estate. We have already pointed out that proof of independent advice becomes indispensable only when the fairness of the will and the competency of the testator cannot be proved clearly and convincingly without it.

The evidence does not bear out Ms. Wilson's claim that Ms. Maddox did not receive independent advice regarding the preparation of her February 1991 will and the June 1995 codicil. While each of the three professionals whom Ms. Maddox consulted had some prior, unrelated professional connection with Joe Whitaker, there is no evidence that Joe Whitaker participated in Ms. Maddox's discussions with these persons, discussed Ms. Maddox's affairs with these persons, or even knew the specifics of Ms. Maddox's conversations with these persons. Both Joe Whitaker and Ms. Wilson testified categorically that they had no knowledge of the contents of Ms. Maddox's will until after she died.

While it is conceivable that a lawyer's or accountant's relationship with several members of the same family could lead to a conflict of interest, we decline to establish the sort of bright-line rule of disqualification that Ms. Wilson suggests. The Tennessee Supreme Court has already provided general guidance for deciding these issues. For advice to be independent, the person providing the advice must be competent to render it and must be "so disassociated from the interests of the donee as to be in a position to advise with the donor impartially and confidently as to the consequences . . . of the proposed benefactions." *Turner v. Leathers*, 191 Tenn. 292, 297-98, 232 S.W.2d 269, 271 (1950).

Lawyers frequently advise different family members without compromising their ability to provide competent, independent legal advice. In the context of preparing a will, it is not difficult to conceive of at least four possible scenarios in which a lawyer's independence might be called into question. The first scenario involves a lawyer who assists in the preparation of a will in which the lawyer himself or herself receives a gift. Obviously, the lawyer's independence concerning that instrument can be questioned. *Matlock v. Simpson*, 902 S.W.2d at 386; *In re Estate of Cranor*, No. M1997-00231-COA-R3-CV, 2000 WL 343787, at *9 (Tenn. Ct. App. Apr. 4, 2000) (No Tenn. R. App. P. 11 application filed).

The second scenario involves a circumstance where a lawyer is simultaneously representing the testator and a possible beneficiary in a financial matter that may affect the amount that the beneficiary might receive in the testator's will. In the context of this sort of multiple representation, the beneficiary would have an extremely difficult time proving that the lawyer's advice to the testator was independent. The third scenario involves a circumstance where the lawyer preparing the will is also representing one of the intended beneficiaries in an unrelated matter. While this circumstance could possibly compromise the independence of the lawyer's advice, each case must be examined in light of its unique facts to ascertain whether the lawyer's advice and counsel were unbiased and independent. The fourth scenario involves a circumstance where the lawyer preparing the will at some point in the past represented one of the intended beneficiaries in an unrelated matter that has been concluded. In this circumstance, it will be extremely difficult for the contestant to prove that the lawyer did not provide the testator independent legal advice.

Mr. Beaty knew both Ms. Maddox, her late husband, and Joe Whitaker through church. He considered himself to be their family attorney. He represented Joe Whitaker in his business matters up until the time of Joe Whitaker's divorce. He also assisted Ms. Maddox with the preparation of her February 1991 will and, at Ms. Maddox's request, represented Ms. Wilson in her divorce. Mr. Beaty explained that he applied the "stink" rule when it came to potential conflicts and that "if I thought something was going on, me and . . . [Ms. Maddox] would have had one of them talks. And we would have both cried, but we would have done what had to be done." He also stated that "I'm pretty darn independent and feel like I can give Dot [Ms. Wilson] advice and Joe advice and . . . [Ms. Maddox] advice, independent of the cares, concerns, or impact on them." Mr. Beaty never discussed the contents of Ms. Maddox's will with Joe Whitaker or Ms. Wilson prior to Ms. Maddox's death.

Ms. Dunning assisted in the preparation of Ms. Maddox's February 1991 will and prepared the June 1995 codicil. She was associated with Mr. Beaty when Ms. Maddox's will was prepared and was practicing with another firm when she prepared the June 1995 codicil. When Ms. Maddox sought her assistance in 1995, Ms. Dunning reminded Ms. Maddox that she was currently representing Joe Whitaker in his divorce and suggested that she should retain Mr. Beaty to prepare the codicil. However, Ms. Maddox insisted that Ms. Dunning prepare the codicil. Ms. Dunning stated that she never discussed the contents of Ms. Maddox's February 1991 will or the June 1995 codicil with either Joe Whitaker or Ms. Wilson until after Ms. Maddox's death.

Both Mr. Beaty and Ms. Dunning were representing Joe Whitaker on entirely unrelated matters when Ms. Maddox consulted them about her will and the codicil to her will. Both of these lawyers had long-standing relationships with Ms. Maddox and had represented Ms. Maddox and other members of her family in the past. Joe Whitaker did not steer Ms. Maddox to these lawyers and was not actively involved in Ms. Maddox's discussions with them regarding the disposition of her property. There is no evidence in the record to support a conclusion that these lawyers could not have provided Ms. Maddox competent and independent legal advice because of their past or continuing professional dealings with Joe Whitaker. Accordingly, we disagree with Ms. Wilson and find that Ms. Maddox received competent and independent legal advice both with regard to her February 1991 will and the 1995 codicil.

No one disputes that Ms. Maddox had an especially close relationship with Joe Whitaker and Allen Whitaker. They were the two grandsons closest to her, and over the years they provided her the most direct assistance and support. Accordingly, it was natural for Ms. Maddox to treat them differently in her will than she treated Ms. Wilson's three children. Despite Ms. Wilson's assertions to the contrary, we find that the contents of the October 1989 handwritten list of Ms. Maddox's property does not differ materially from Ms. Maddox's February 1991 will except for the $250,000 trust for Ms. Wilson. However, Ms. Maddox's reasons for creating the trust for her daughter are clear. Ms. Maddox told both Mr. Beaty and Ms. Dunning that she was concerned that Ms. Wilson's ability to manage money might be impaired by her struggle with alcohol and her domestic difficulties. It is, therefore, not remarkable that Ms. Maddox would decide to protect her bequest to Ms. Wilson from waste and encroachment by creating a trust to pay out her gift to Ms. Wilson over ten years.

Based on our independent review of the record, we have determined that the evidence demonstrates clearly and convincingly that Ms. Maddox's February 1991 will and the 1995 codicil reflected her own testamentary intent. The record contains no direct evidence that Joe Whitaker undertook to influence, let alone, unduly influence,[3] Ms. Maddox's decisions regarding the distribution of her property. The circumstantial evidence offered by Ms. Wilson to challenge the will and the codicil is, at best, weak and is clearly and convincingly rebutted by the other evidence in the

---

[3]The law prohibits only the use of undue influence to influence a person's testamentary decisions. It does not proscribe persuasion or influence. *Keasler v. Estate of Keasler*, 973 S.W.2d 213, 219 (Tenn. Ct. App. 1997); *Parham v. Walker*, 568 S.W.2d 622, 624 (Tenn. Ct. App. 1978).

record showing that Ms. Maddox remained strong-willed to the end and that she acted intentionally and deliberately with regard to her personal finances as well as her estate planning. Accordingly, we affirm the trial court's decision to uphold Ms. Maddox's February 1991 will and her June 1995 codicil.

## II.

We affirm the judgment of the trial court and remand the case to the Sumner County Chancery Court for further proceedings consistent with this opinion. We tax the costs of this appeal to Dorothy Virginia Maddox Wilson and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE