IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 11, 2004 Session

## CHARLES SMITH, EXECUTOR OF THE ESTATE OF ETHEL ROGERS SMITH, v. JERRY SMITH

**Direct Appeal from the Chancery Court for Hamblen County**
**No. 2000-200     Hon. Thomas R. Frierson, II., Judge**

---

**No. E2003-02877-COA-R3-CV - FILED OCTOBER 25, 2004**

---

The Trial Court held that the confidential relationship between defendant and deceased voids the transaction because deceased did not have independent advice. On appeal, we reverse.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, J., joined.

Douglas R. Beier, Morristown, Tennessee, for Appellant.

Christopher P. Capps, Morristown, Tennessee, for Appellee.

## OPINION

This case was previously before the Court on appeal.

In the first appeal, the Trial Court found that there was no confidential relationship between Jerry and Ethel Smith, and also found that Jerry did not exercise such dominion and control over Ethel that the transactions in dispute should be voided for undue influence. On appeal, we determined that a confidential relationship did exist between Jerry and Ethel based upon the power of attorney which, even though it never became operative by its terms, was treated by Jerry and Ethel as if it were effective and unrestricted. We held that a presumption of undue influence arose, and remanded the case to the Trial Court for a determination of whether Jerry had sufficiently rebutted

the presumption by clear and convincing evidence of the fairness of the transactions creating the Suntrust account, "and for such further proceedings as may be required".

After remand, the Trial Court entered an Opinion and said that since this Court had not directed it to conduct a new trial or consider additional evidence, the Court reviewed the evidence presented at trial and determined that Jerry had not rebutted the presumption of undue influence. The Court held that to prove the fairness of the transaction, the dominant party could show that the weaker party received independent advice before engaging in the transaction, which would come from one who was competent and disassociated from the parties. The Court held that Ethel never had independent advice before investing her funds in the joint Suntrust account, and thus Jerry failed to show by clear and convincing evidence the fairness of the transactions. The Court then set aside the transactions, and held that all funds in the Suntrust account would be part of Ethel's estate.

Jerry then filed a Tenn. R. Civ. P., Rule 59 Motion for New Trial, arguing that he should be allowed to present evidence on the issue remanded by this Court, because the issue was "not central to the matters previously being tried and therefore, Defendant's proof on this issue was not completely pursued and developed." The Court held a hearing on the Motion, and no offer of proof was made. The Trial Court denied the motion.

The issues on appeal are:

1.      Did the Trial Court err in failing to allow a new trial and hear evidence on the issue of undue influence after remand?

2.      Did the Trial Court err in finding that Jerry Smith had not rebutted the presumption of undue influence?

3.      Did the Trial Court err in finding that Ethel Smith did not receive independent advice?

Jerry argues that the Trial Court erred in failing to grant his motion seeking a new trial so that he could present additional evidence. As we have previously held, a trial judge has broad discretion in granting or denying a new trial. *Tennessee Asphalt Co. v. Purcell Enterprises, Inc.*, 631 S.W.2d 439 (Tenn. Ct. App. 1982). Further, the burden is on the movant to show the abuse of discretion. *Esstman v. Boyd*, 605 S.W.2d 237 (Tenn. Ct. App. 1979). Jerry has not shown that the Trial Court abused its discretion in denying his motion for new trial, but he argues the Trial Court should have granted the motion because, prior to our ruling in the first appeal, he had no reason to believe that the power of attorney would create a confidential relationship between the parties, because it had not become effective according to its terms. This argument ignores the fact that the parties had acted as though the power of attorney was effective, and Jerry used the power of attorney to execute documents as Ethel's attorney-in-fact. The argument also ignores the fact that undue influence and a confidential relationship were pled in the initial Complaint, and were clearly issues that were raised at trial. Proof was offered in the first trial regarding the circumstances of the

transactions establishing the Suntrust account, and whether there was undue influence exercised by Jerry in those transactions. Thus, Jerry has not shown that he was prejudiced in any way by the Trial Court's failure to allow a new trial, since the issues were tried in the first trial. We find this issue to be without merit.

The Trial Court found that Jerry had not sufficiently rebutted the presumption of undue influence, primarily relying on a fact that Ethel had not received independent advice before making the transactions at issue. Jerry argues that he did rebut the presumption of undue influence, based on the proof which showed that his mother's mental condition was good, she made her own decisions, she was upset with Charles and his wife and did not want them to inherit, and that she receive independent advice from a Mr. Brice.

As this Court has previously explained:

> . . . the existence of a confidential relationship, combined with a gift or benefit to the dominant party, creates a presumption of undue influence, and of the invalidity of the transaction. This presumption is not conclusive, however, for it may be rebutted by clear and convincing evidence of the fairness of the transaction.

*Martin v. Moore*, 109 S.W.3d 305, 310 (Tenn. Ct. App. 2003). Our Supreme Court has stated that the "presumption of invalidity, however, is rebuttable and the rule in this State is that clear and convincing evidence of fairness will suffice. Proof that the donor received independent advice respecting the consequences and advisability of the gift is one example, but not the only one, of such proof of fairness." *Richmond v. Christian*, 555 S.W.2d 105, 107-108 (Tenn. 1977). That Court went on to explain that independent advice is required where the "circumstances are such that it would be difficult to show the fairness of the transaction without proof of independent advice, particularly, where the donor is impoverished by the gift in question or the gift seems to be unnatural under the circumstances of the case." *Id.* at 108. The Court reiterated that such proof is not necessary in every case to rebut the presumption. *Id*.

In *Fell v. Rambo*, 36 S.W.3d 837 (Tenn. Ct. App. 2000), we said:

> Although proving that the subservient party had independent advice is one way of showing the fairness of the transaction, it is not the only way. Courts require evidence of independent advice only where it would be difficult to show the fairness of the transaction without it. This typically arises when the transaction under scrutiny is a gift from a feeble or incompetent subservient party to the dominant party, and the gift leaves the donor impoverished.

*Id.* at 848. In *Fell*, a confidential relationship arose due to a power of attorney, and the transaction in question was the sale of the subservient party's farm, which benefitted the dominant party because she was primary beneficiary of the subservient party's estate, and the sale defeated the interest of remaindermen in the property. We noted, however, that the sale did not leave the subservient party

impoverished, and thus it was not necessary to show that she received independent advice. *Id*.

We further explained that the presumption of undue influence had been rebutted by clear and convincing evidence, because the proof showed that it was the subservient party's choice to sell the farm, she signed the contract and the deed, the purchase price was within a reasonable range, and she lived in a retirement home and no longer needed the farm. *Id*. We concluded that the proof sufficiently showed that the transaction was fair to the subservient party, and the fact that it was unfair to the remaindermen was irrelevant. *Id*.

Similarly, in the case before us, the undisputed proof showed that Ethel's mental capabilities were good, she understood her finances and made her own decisions regarding the same. The undisputed proof was that she wanted to sell her home because she was living at Grand Court and no longer needed it, and there was no dispute raised that the selling price was unfair or unreasonable. The proof did not show that Jerry had anything to do with the sale of the residence, the negotiations regarding the same, or that he played any role whatsoever except for signing the documents on Ethel's behalf at closing because she did not feel up to doing so and asked him to go in her stead. Moreover, Charles' daughter testified that she supported Ethel's selling the house and took no issue with that transaction.

The undisputed proof further showed that Jerry then deposited the proceeds from the sale of the house into a joint CD at Ethel's request, and later took Ethel to Suntrust Bank to meet with Mr. Brice to discuss how to best invest her money so that she could pay her bills with her monthly interest payments. The proof was that Ethel participated and talked with Mr. Brice, understood what she was doing, and made her own decision to open the joint account and invest her money. She signed documents herself and made the initial investment, and later deposited funds in the account from a CD at BankFirst that had matured.

The Suntrust account was joint, and Ethel held title to it and control over the funds and was not impoverished by the transactions. Thus, we conclude that the Trial Court erred in basing its decision purely on a requirement of independent advice, because such advice is not necessarily required, as heretofore discussed. The proof showed the transactions were fair to Ethel by clear and convincing evidence, since it is undisputed that Ethel's mind was good and she made her own financial decisions, participated in transactions which benefitted her and were designed to give her money to pay her monthly bills and she was not impoverished thereby.

One of Charles' positions is the transactions should be voided because they were not fair to him as a potential beneficiary, but this is not the appropriate test. *See Fell*, *supra*. Moreover, the undisputed proof was that Ethel's intent was to leave her entire estate to Jerry and his wife, due to her estrangement from Charles and his wife, and that the rift had existed for thirty years. The proof was also undisputed that Ethel was upset with Charles for not coming to see her and told others not to call him for anything, but instead looked to Jerry for her transportation needs and otherwise. Jerry, Edith and Mr. Brice testified that Ethel made the decision to set up the Suntrust account with rights of survivorship, and that she understood the implications of doing so, i.e., that it would not

pass to Charles.  We cannot on this proof invalidate a decision made by a competent adult, simply because a potential beneficiary thinks it is unfair to him or her.

This case is also factually similar to the case of *In re Estate of Maddox*, 60 S.W.3d 84 (Tenn. Ct. App. 2001), wherein the testator's daughter sought to challenge the will and a codicil thereto based on the ground that a grandson had procured them through undue influence.  The testator had given her grandson power of attorney 5 years before her death, and left him a sizeable portion of her estate when she died.  The presumption of undue influence arose, but this Court affirmed the Trial Court's judgment that the presumption was sufficiently rebutted.  The Court discussed the fact that proof of independent advice was not always required, and stated "the scope of the evidence regarding the fairness of a transaction or gift is quite broad."  *Id*. at 89.  The Court went on to summarize:

> Based on our independent review of the record, we have determined that the evidence demonstrates clearly and convincingly that Ms. Maddox's February 1991 will and the 1995 codicil reflected her own testamentary intent.  The record contains no direct evidence that Joe Whitaker undertook to influence, let alone, unduly influence, Ms. Maddox's decisions regarding the distribution of her property.  The circumstantial evidence offered by Ms. Wilson to challenge the will and the codicil is, at best, weak and is clearly and convincingly rebutted by the other evidence in the record showing that Ms. Maddox remained strong-willed to the end and that she acted intentionally and deliberately with regard to her personal finances as well as her estate planning.  Accordingly, we affirm the trial court's decision to uphold Ms. Maddox's February 1991 will and her June 1995 codicil.

*Id.* at 92.

We hold the presumption of undue influence was sufficiently rebutted on this record. *See, Childress v. Currie*, 74 S.W.3d 324 (Tenn. 2002).

The Trial Court erred in finding that Jerry had failed to rebut the presumption of undue influence by clear and convincing evidence, and the trial Court's judgment is reversed.  The transactions are upheld so that the funds pass to Jerry, as it was Ethel's clear intent.

The cause is remanded with the cost of the appeal assessed to Charles Smith, Executor of the Estate of Ethel Rogers Smith.

_____
HERSCHEL PICKENS FRANKS, P.J.