IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 13, 2018 Session

## RONALD DANA HARPER v. ANNETTE CARROL HARPER

**Appeal from the Chancery Court for Madison County**
**No. 73947     James F. Butler, Chancellor**

_____

### No. W2017-02193-COA-R3-CV

_____

This is a divorce case.  Husband appeals the trial court's classification of three tracts of land as Wife's separate property and its valuation of Husband's bank account. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded.**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

C. Timothy Crocker, Michael A. Carter, and Ryan L. Hall, Milan, Tennessee, for the appellant, Ronald Dana Harper.

Andrea D. Sipes, Jackson, Tennessee, for the appellee, Annette Carrol Harper.

## OPINION

### I.     Background

Appellant Ronald Dana Harper ("Husband") and Appellee Annette Carrol Harper ("Wife") were married on May 14, 2011.  This was Wife's second marriage and Husband's fourth marriage.  The parties separated in January 2016, and Husband filed for divorce on January 27, 2016.  On March 31, 2016, Wife filed an answer and counter-complaint for divorce.  The parties stipulated to divorce under Tennessee Code Annotated section 36-4-129 and further agreed to the division of the majority of the marital property.  However, as to three tracts of real property, the parties could not reach an agreement.  The tracts include one 69.5 acre property ("Farmhouse"), which was used

as the parties' marital residence for part of the marriage. The second tract is approximately 291 acres, and the third tract is approximately 81 acres. Wife owned all three tracts prior to the marriage, and all of the tracts were unencumbered at the time of marriage. She testified that she acquired the 69.5 acre tract from her father prior to his death and inherited the other two tracts from her father's estate. According to Wife, these tracts have been in her family for more than 150 years.

In December 2011, Wife signed quit claim deeds on the three tracts creating tenancies by the entirety with Husband. Wife testified that she never wanted to transfer any interest in the tracts to Husband; however, Wife alleged that Husband harassed and berated her daily and threatened to leave her if she did not execute the deeds. Wife testified that the daily arguments over the properties escalated until she finally gave in to Husband's demand that she put the properties in both their names. Wife further testified that after she signed the quit claim deeds, Husband's treatment of her worsened. Husband denied ever asking Wife to transfer her property to him.

The case was heard on May 11, 2017. At trial, Husband argued that the three tracts were marital property and requested that the trial court allocate the 291 acre tract of land to him. On August 10, 2017, the trial court issued a letter ruling, which was incorporated into the final decree of divorce entered on October 23, 2017. The trial court held that the three tracts of land were Wife's separate property and awarded them to her. Husband appeals.

## II. Issues

Husband raises two issues for review as stated in his brief:

1.     The trial court erred by classifying three tracts of real property in Madison County as Wife's separate property rather than marital property.

2.     The trial court erred by over-valuing Husband's bank account.

## III. Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); ***Kaplan v. Bugalla,*** 188 S.W.3d 632, 635 (Tenn. 2006). However, we accord no presumption of correctness to the trial court's conclusions of law. ***Snodgrass*** 295 S.W.3d at 245-46 (Tenn. 2009); ***Luplow v. Luplow***, 450 S.W.3d 105, 109 (Tenn. Ct. App. 2014).

The trial court found Wife to be more credible than Husband regarding certain issues. The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact. The credibility accorded will be given great weight by the appellate court. *In re Navada N.,* 498 S.W.3d 579, 591 (Tenn. Ct. App. 2016); *Manning v. Manning,* 474 S.W.3d 252, 262 (Tenn. Ct. App. 2015); *Audio Visual Artistry v. Tanzer,* 403 S.W.3d 789, 810 (Tenn. Ct. App. 2012).

## IV. Analysis

### A. Transmutation

In making a division of property, the trial court must first classify the property as either separate or marital property. Tenn. Code Ann. § 36-4-121(b); *Kinard v. Kinard,* 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). The classification of particular property as either separate or marital is a question of fact to be determined in light of all relevant circumstances. *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 245 (Tenn. 2009); *See Langford v. Langford,* 220 Tenn. 600, 421 S.W.2d 632, 634 (1967); *Cutsinger v. Cutsinger,* 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995). This Court gives great weight to a trial court's decision regarding the division of marital assets, and we will not disturb the trial court's ruling unless the distribution lacks proper evidentiary support, misapplies statutory requirements or procedures, or results in some error of law. *Keyt v. Keyt,* 244 S.W.3d 321, 327 (Tenn. 2007). This distinction is important because Tennessee Code Annotated section 36-4-121(a) provides for the distribution of marital property only. Tenn. Code Ann. §36-4-121(a); *Larsen-Ball v. Ball*, 301 S.W.3d 228, 231 (Tenn. 2010).

Separate property is defined in part as "all real and personal property owned by a spouse before marriage, including, but not limited to property acquired by a spouse at any time by gift, bequest, devise or descent." Tenn. Code Ann. §36-4-121(b)(2). The classification of property does not depend on the state of its record title but on the conduct of the parties. *Altman v. Altman*, 181 S.W.3d 676, 680-81 (Tenn. Ct. App. 2005); *Mondelli v. Howard,* 780 S.W.2d 769, 774 (Tenn. Ct. App. 1989). "[S]eparate property can become part of the marital estate due to the parties' treatment of the separate property." *Eldridge v. Eldridge,* 137 S.W.3d 1, 13 (Tenn. Ct. App. 2002). Separate property may be deemed marital by operation of law under theories of commingling or transmutation. *Snodgrass*, 295 S.W.3d at 247 (citing *Langschmidt v. Langschmidt,* 81 S.W.3d 741, 747 (Tenn. 2002)); *Eldridge,* 137 S.W.3d at 13. This Court addressed the related doctrines of commingling and transmutation for the first time in *Langschmidt* and adopted the following explanation:

> [S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur. . . .

- 3 -

[Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. . . . The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed to be marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

81 S.W.3d at 747 (quoting 2 Homer H. Clark, *The Law of Domestic Relations in the United States* § 16.2 at 185 (2d ed. 1987)).

Here, Husband argues that the trial court incorrectly classified the three tracts of real property as Wife's separate property. He contends that the property became marital property, subject to equitable division, under the doctrine of transmutation. Four of the most common factors courts use to determine whether real property has been transmuted from separate property to marital property are: (1) the use of the property as a marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property. *Treadwell v. Lamb*, No. M2015-01391-COA-R3-CV, 2017 WL 945940, at *7 (Tenn. Ct. App. Jan. 19, 2017); *Liner v. Liner*, No. M2010-00582-COA-R3-CV, 2011 WL 1420883, at *2-3 (Tenn. Ct. App. Apr. 13, 2011); *Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *5 (Tenn. Ct. App. Sept. 1, 2006). Relying on these factors, Husband argues that the disputed tracts are marital property. Specifically, he contends that: (1) the parties lived together on the farmhouse tract during part of the marriage; (2) he bush-hogged the land and maintained the properties and also assisted in the renovation of the farmhouse; (3) in 2011, Wife executed quit claim deeds on all three tracts creating tenancies by the entirety; and (4) he obtained a home equity line of credit secured by all three tracts. Husband further argues that the parties used $50,000 to renovate the farmhouse. These funds, however, originated from the sale of a fourth piece of property, known as the Medina property, which Wife owned before the marriage and transferred to Wife and Husband as tenants by the entirety after the marriage.

In response to Husband's argument, Wife avers that Husband did not maintain the 291 acre tract of land after the parties were married. Instead, Wife insists that the farmers, who have leased the land since before she inherited it, were responsible for the bush-hogging and maintaining the property. Wife maintains that the farmers were responsible for the maintenance of the other tracts as well, and that Husband did not do the bush-hogging he described. As to the renovations on the farmhouse, Wife testified that the money for the renovations came from the sale of the Medina property, which she purchased prior to the marriage with funds she received as a result of the death of her first

- 4 -

Husband. Wife further testified that a contractor renovated the farmhouse, not Husband. According to Wife, Husband's work on the house was limited to painting the living room and installing a window. Regarding the home equity line of credit obtained by Husband, Wife's name was not on the account holding these funds and she did not have access to the funds. There is no indication that Wife was involved in obtaining the loan and she never signed as a guarantor, even though all three tracts of land were used to secure the home equity line of credit.

Although Husband's argument that the tracts are marital property relies on the four most common factors used to determine whether real property has been transmuted, the gravamen here concerns Wife's allegation that Husband unduly influenced her to execute the quit claim deeds on the disputed tracts and that she never intended to transfer a property interest in these tracts to Husband. A confidential relationship is "that relationship where confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with the ability, because of that confidence, to influence and exercise dominion over the weaker or dominated party. . . ." *Kelley v. Johns*, 96 S.W.3d 189, 197 (Tenn. Ct. App. 2002) (quoting *Iacometti v. Frassinelli*, 494 S.W.2d 496, 499 (Tenn. Ct. App. 1973)). There are two sources of such confidential relationships: (1) "legal confidential relationships," and (2) "family and other relationships." *Matlock v. Simpson*, 902 S.W.2d 384, 385-86 (Tenn. 1995). Confidential relationships can assume a variety of forms, and thus the courts have been hesitant to define precisely what a confidential relationship is. *Robinson v. Robinson*, 517 S.W.2d 202, 206 (Tenn. Ct. App. 1974). A confidential relationship may include "a husband with his wife." *Zimmerman v. Ross*, No. 01A01-9201PB00036, 1992 WL 210471, at *10 (Tenn. Ct. App. Sept. 2, 1992) (citing GIBSON'S SUITS IN CHANCERY, § 388(3) (7th ed. 1988)). In general terms, it is any relationship that gives one person dominion and control over another. *Childress v. Currie*, 74 S.W3d 324, 328 (Tenn. 2002); *Johnson-Murray v. Burns*, 525 S.W.3d 625, 635 (Tenn. Ct. App. 2017); *Floyd v. Akins*, 553 S.W.3d 469, 478 (Tenn. Ct. App. 2017); *Mitchell v. Smith*, 779 S.W.2d 384, 389 (Tenn. Ct. App. 1989). It is not the confidential relationship between the parties that our courts are concerned with, but the abuse of that relationship. *In re Estate of Maddox*, 60 S.W.3d 84, 89 (Tenn. Ct. App. 2001). A confidential relationship followed by a transaction in which the dominant party receives a benefit from the other party creates a presumption of undue influence. *Childress*, 74 S.W.3d at 328; *In re Estate of Link*, 542 S.W.3d 438, 452–53 (Tenn. Ct. App. 2017); *In re Estate of Price*, 273 S.W.3d 113, 125 (Tenn. Ct. App. 2008).

In this case, the trial court made the following findings in regard to the parties:

The court was called on to judge the credibility of the witnesses by seeing their testimony, their body language, facial movements, inflection in their voices, and other factors which assisted the court in credibility determinations. The court observed and found that the Husband was the

dominant personality between the parties, and that Wife, while older, did not have the business acumen that Husband possessed. Wife tended to be a meek person, easily led, and one who did not seem to know how to deal with aggression or verbal harassment. The court also finds that Wife is more credible than Husband concerning his activities with the farm land and the renovations to the marital home and the Medina property. Further, Husband's actions and verbal harassment of Wife over the real property severely diminished her ability to resist his demands about putting his name on her real property, such that she did not intend to make a gift to the marital estate, but was attempting to buy peace and save her marriage. The court finds, based on testimony and observing the parties in court, that Wife did not understand the implications of "putting his name on the deeds."

To the extent the foregoing findings are based on the trial court's observation of Husband's credibility, we defer to the trial court. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). Here, the record supports the findings of the trial court.

Wife testified that Husband berated and badgered her daily regarding transferring ownership of the tracts. Wife testified that she and Husband had arguments every day, and that Husband was often loud and belligerent. According to Wife, Husband told her to call her lawyer and get it [i.e., the quit claim transfers] started or he would leave her. Wife testified that she "had a broken spirit after that because hearing that day in and day out, I thought I was going to have a nervous breakdown. I had a broken spirit, and I couldn't deal with it anymore." During the trial, Wife testified as follows:

> Q. Did you understand what you were doing that day by putting his name on those deeds?
>
> A. I didn't even hardly know my name that day.
>
> Q. Why is that?
>
> A. Because I was doing something against my will.
>
> ***
>
> Q. When you executed those deeds, did you understand you were giving him an ownership interest in this property?
>
> A. I really didn't know why I was even caring to live.

Wife introduced her journal entry dated September 20, 2011 into evidence. Wife's journal states, "Ron said he was leaving me, that I lied, kept things from him, threw him under the bus." Directly beneath this entry is a note in Husband's handwriting that states,

"I'm not leaving Annette. I'm am [sic] simply going to establish a home for me and my wife. You and your family can fight over all of your stuff. I don't want it!" Husband denied that he asked Wife to transfer the tracts of land to him. He further denied that he threatened to leave Wife if she didn't execute the deeds.

In addition to the foregoing testimony, Wife and her daughter both testified that Husband was frequently verbally abusive to Wife. Wife testified that Husband would often call her a "whore" and "stupid." According to Wife, Husband was critical of any chore Wife performed and told her that she "wasn't doing it right." Wife's daughter testified that she did not meet Husband until after the parties married, at which point, Wife became more isolated and distant. According to her daughter, Wife began missing important family events including her grandchild's baptism. Wife's daughter witnessed Husband calling her mother "stupid," and testified that she never saw Husband behave in a loving and supportive manner toward her mother. The testimony regarding Husband's emotional abuse is unrefuted. Following our review of the record, we conclude that the substantive findings of the trial court are supported therein, and that Wife properly rebutted the presumption of a gift to the marital estate. Accordingly, we affirm the trial court's classification of the three tracts of land as Wife's separate property.

### B. Valuation of Husband's Bank Account

In his second issue, Husband argues that the trial court erred in valuing Husband's Regions Bank account at $17,264.00 instead of $111.00. During the trial, Husband testified that his checking account had a balance of $18,239.05 on March 21, 2017. Husband further testified that he used those funds to pay legal fees as well as pay off the balance on the home equity line of credit. Husband testified that the balance on his account was $111.00 on the day of trial, and submitted a statement reflecting that balance. The trial court attached a spreadsheet to the final decree of divorce delineating the value and allocation of marital and separate property. The spreadsheet assigned Husband's Regions Bank account to Husband with a value of $17,264.00. The trial court stated that "Husband depleted the account to pay his attorney fees in the pending divorce which is not a marital debt. Thus the Husband is charged with the entire value of the asset." Rule 27(a)(8) of the Tennessee Rules of Appellate Procedure requires the appellant to include a short conclusion stating the precise relief sought. On this issue, Husband does not indicate what relief he seeks from this Court for this error. Tennessee Code Annotated section 36-4-121(a)(1) requires an *equitable* division of marital property, not an *equal* division. ***Larsen-Ball v. Ball***, 301 S.W.3d 228, 231 (Tenn. 2010); ***Robertson v. Robertson****,* 76 S.W.3d 337, 341 (Tenn. 2002). The trial court's ultimate division of marital property allocated $27,769.00 to Husband and $11,364.00 to Wife. Assuming arguendo that Husband's assigned value of $111.00 is correct, this would result in a division of $10,616.00 to Husband and $11,364.00 to Wife. We conclude that this roughly equal division of marital property is equitable, and, therefore, any error by the trial court in valuing Husband's bank account is harmless.

## V.    Conclusion

For the foregoing reasons, we affirm the trial court's judgment.   The case is remanded to the trial court for further proceedings as may be necessary and are consistent with this Opinion.   Costs on the appeal are assessed against the Appellant, Ronald Dana Harper and his surety, for all of which execution may issue if necessary.


_____
KENNY ARMSTRONG, JUDGE