IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 18, 2020 Session

## ORNL FEDERAL CREDIT UNION, ET AL. V. ESTATE OF HELEN D. TURLEY, ET AL.

**Appeal from the Chancery Court for Anderson County**
**No. 16CH8455     M. Nichole Cantrell, Chancellor**

_____

**No. E2019-00861-COA-R3-CV**

_____

This appeal concerns a lawsuit between brothers over funds belonging to their late mother, Helen D. Turley ("Decedent"). Tim Turley, executor of Decedent's estate ("the Estate"), deposited $138,605.14 from a Y-12 Federal Credit Union ("Y-12 FCU") account owned by Decedent into an estate account at ORNL Federal Credit Union ("ORNL FCU"). An issue arose because William Dean Turley was named sole payable-on-death beneficiary on the Y-12 FCU account, and he asserted the funds were his. ORNL FCU filed a complaint for interpleader in the Chancery Court for Anderson County ("the Trial Court") to determine the funds' owner. In a cross-claim, Tim Turley and the Estate alleged that William Dean Turley exercised undue influence over Decedent and that Decedent was incompetent when she named William Dean Turley as the payable-on-death beneficiary on the account. William Dean Turley filed a motion for summary judgment, which the Trial Court granted. The Estate and Tim Turley appeal. We hold that William Dean Turley successfully demonstrated that the evidence at the summary judgment stage is insufficient to establish undue influence, fraud, or lack of mental competency, and there are no genuine issues of material fact for trial. We reverse the Trial Court's judgment, however, to the extent it awarded attorney's fees and expenses to William Dean Turley, as these fees and expenses were awarded in contravention of the American Rule. Otherwise, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed, in Part, and Reversed, in Part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellant, Estate of Helen D. Turley, deceased.

J. Stephen Hurst, LaFollette, Tennessee, for the appellant, Tim Turley.
David A. Stuart, Clinton, Tennessee, for the appellee, William Dean Turley.

George Turley and Jon Turley, pro se appellees.[1]

**OPINION**

**<u>Background</u>**

On May 24, 2010, Helen D. Turley designated her adult son William Dean Turley sole payable-on-death beneficiary on her account at Y-12 FCU. In August 2013, she died. Tim Turley, another of Decedent's four sons, was named executor of the Estate. In November 2014, Tim Turley opened an account for the Estate at ORNL FCU, and he deposited $138,605.14 into this account from Decedent's Y-12 FCU account. William Dean Turley's designation as payable-on-death beneficiary was discovered, which precipitated this litigation. Incidentally, William Dean Turley previously had served as co-executor of his father's estate, a fact later highlighted by the Estate in support of its stance that William Dean Turley's relationship with Decedent was confidential in nature.

In November 2016, ORNL FCU filed a complaint for interpleader in the Trial Court against the four Turley brothers and the Estate seeking a determination as to the rightful owner of the funds. That same month, William Dean Turley filed an answer and cross-claim asserting claims for conversion and violation of "the Tennessee Consumer Protection Law" against his brother, Tim Turley. William Dean Turley filed requests for admissions, as well. In January 2017, Tim Turley, individually and as Executor of the Estate, filed an answer and cross-claim alleging that his brother, William Dean Turley, had exercised undue influence on Decedent and that Decedent was not competent to designate William Dean Turley as beneficiary on her Y-12 FCU account. In March 2017, ORNL FCU was dismissed, its role in the case having come to an end.

In July 2018, William Dean Turley filed a motion for summary judgment. The motion was supported by a statement of undisputed material facts, a declaration under penalty of perjury, and transcripts of the depositions of William Dean Turley and Tim Turley, along with exhibits. Among the material facts William Dean Turley submitted were these:

> 9. Dean was present in the bank when the payable on death designation was made on May 24, 2010. However, he was unaware of it at

[1] These parties have not filed briefs on appeal.

the time, having been asked to step away at one point while their mother was conducting business with the bank officer.

***

12. In his deposition testimony, Tim Turley admitted he had no idea what went on between his brother, William Dean Turley, and their mother, in connection with the decision to make equal distributions from their father's estate, or whose idea it was to make equal distributions, with William Dean Turley having testified that he did what his mother wanted in connection with those distributions.

13. Their mother lived at home with their brother Jon until her final illness.

14. Although their mother had been hospitalized in psychiatric facilities in the 1990s and needed to take psychiatric medications, Tim Turley has no expert evidence of a lack of mental capacity or competence on her part at any material time.

15. William Dean Turley was unaware that he had been designated the payable on death beneficiary of the account in question until early in October, 2016, when he found an envelope with an account statement in it with his mother's handwriting on the front saying that it was important and "for Dean." The envelope and its contents were provided as late filed Exhibit 6 to his deposition.

16. William Dean Turley never had a discussion with their mother about giving him more money than his brothers, but there were many possible reasons she would have done so; their parents had previously paid off approximately eighty thousand dollars ($80,000.00) in student loans for him.

17. William Dean Turley never had a discussion with their mother in which there had been a suggestion that he would distribute the proceeds of the account designated payable on her death to him equally like she had told him to do with the proceeds of the father's estate.

18. In May of 2010, their mother was cogent and looking for interesting and meaningful things to do, as she had done all her life, and she and Dean often talked over the phone; when he took her on the bank visits on May 24, 2010, she was in good condition and had no difficulty walking.

19. In 2010, William Dean Turley was living in Knoxville, and their mother lived at home with their brother, Jon, who helped care for her and provided most of her transportation.

20. In support of his motion for summary judgment, William Dean Turley has submitted a sworn declaration, filed contemporaneously herewith, which states that his mother was in good physical and mental

condition on the 24th day of May, 2010, that he did not influence her in any way in connection with the payable on death designation she made that day, that he did not know about the designation having been made until October, 2016, when he found late-filed Exhibit 6, that he was not in a fiduciary relationship with his mother at any time, that although they had a normal relationship of trust between a parent and child, there were no elements of dominance, influence, dependence or control in their relationship and it was accordingly not confidential in nature, and that he did not engage in any fraud, misrepresentation or deceit, or otherwise attempt to persuade or influence their mother in any way in connection with the conduct of her financial and business affairs.

(Citations omitted). In response, Tim Turley did not dispute or affirm each of William Dean Turley's material facts. Tim Turley did file an affidavit, wherein he stated, in part:

2. I filed suit against my brother Dean Turley with regard to him being placed on my mother's bank account as the sole beneficiary, payable on death ("POD").

3. I alleged fraud, undue influence, or that my mother lacked mental capacity to place my brother's name on the account.

4. My brother and I were deposed on January 18, 2018, see attached transcripts.

5. It is my intent to take further discovery, by depositions, particularly of my brother Jon Turley and bank employees who were present when the "POD" was placed on my mother's account.

6. It is my intent to also obtain medical records with respect to my mother's health.

7. In my deposition I on several occasions indicated that my brother Dean Turley obtained a position of trust with my mother, particularly in handling my father's estate.

8. In my depositions, I testified that if my brother, while in a position of trust and using undue influence, persuaded my mother to make him the sole beneficiary of her account in the amount of $138,800.00 which would constitute fraud.

9. In my deposition, I testified that my mother had mental problems; was committed in 1994 and 1998; was diagnosed as bi-polar; was taking a lot of medications; and when not taking her medication became violent.

10. In my deposition I testified that in 2010 my mother was living with my brother Jon Turley until her death. I am aware that my brother Jon Turley provided for my mother in the home; assisted with groceries; and

-4-

transported her to places away from home. Except for the May 24, 2010 trip to the bank, my mother was always taken to the bank by my brother John Turley. The only time I am aware that my brother, Dean Turley, took my mother to the bank was the trip to change the account by making it "POD" payable 100% to him. My brother John was not home when Dean picked her up and was unaware of the trip. Neither Jon nor I were ever made aware of the trip by Dean.

11. The act of placing Dean as sole "POD" beneficiary on my mother's bank account is inconsistent with her attitude and actions, as she always distributed her cash assets equally between her four children….

***

13. Dean showed a pattern of influence on Mom and Dad to improve his financial position.

• He influenced Dad to pay for his $86,000 school loan, saying he "couldn't find a job with a bad credit rating" per my conversations with Dad, who, at about the age of 82, reluctantly paid off the loan in about 2006/07, but had previously told me in about 2003 that he was not going to pay it when the balance was about $45,000.

• He influenced Dad to support his lifestyle saying he "needed to live in Sequoia Hills to have a prestigious address on his resume to help get a job" per my conversations with Dad.

• In about 2012, he secretly influenced Mom to transfer one of her properties, a lot at Renegade Resort, to him before she died without discussing this with his brothers. Once I found out, I asked Mom that to be fair, she should offset the property transfer to Dean with payments to the other siblings, and she wrote checks of about $8,000 to Tim, George, and Jon as another example of fair dealing with regard to estate distributions.

• He has, in the last two years, taken other tangible property from the estate in Clinton, as witnessed by Jon, as another example of opportunistically grabbing estate assets.

***

15. Thus, Dean showed the classic signs of undue influence with the intent to defraud, known as the Fraud Triangle, as I have learned in embezzlement cases as a CPA: (1) the incentive to commit fraud, (2) the opportunity to commit fraud, and (3) the rationalization of the act:

• Incentive. Dean was incentivized to improve his dire financial position prior to the POD and support large purchases of a new car and condo around the time of the POD.

• Opportunity. Dean created the opportunity to commit fraud and undue influence by taking over Dad's probate process and establishing a position of trust by distributing estate funds on Mom's behalf. Further, by secretly transporting her to the bank, alone without the knowledge of other family member[s], he fulfilled the opportunity [to] exert undue influence to have the POD signed to him as beneficiary.

• Rationalization. Dean had a sense of entitlement that he deserved more than his fair share of the estate. He unduly influenced his parents to get out of financial insolvency and then went on to secure the remainder of the cash in Mom's estate to prevent any consideration she may have given to his siblings to offset the money he received from Dad prior to the POD for living expenses and the loan payment well in excess of $100,000.

(Citations omitted). Tim Turley also attached to his response to the motion for summary judgment his "Statement of Fact." Among Tim Turley's facts were these:

1. Cross-Plaintiff, Tim Turley, in his complaint alleged that Cross-Defendant William Dean Turley, used undue influence with the parties' mother Helen D. Turley on May 24, 2010 to induce her to place his name as a payable on death ("POD") beneficiary on a certificate of deposit at Y-12 Federal Credit Union.

2. Cross-Plaintiff further alleged that his mother was not mentally competent at the time to execute the "POD" on May 24, 2010.

3. Cross-Plaintiff finally alleged that the acts of William Dean Turley were fraudulent.

4. Cross-Defendant, William Dean Turley, has generally denied the allegations, and has asserted in his motion for Summary Judgment that his mother was in good physical and mental condition on May 24, 2010; that he did not influence her in any way in connection with the "POD" designations she made on that day; and that he did not engage in fraud, misrepresentation, or deceit.

5. The parties have not completed discovery.

***

17. Although Cross-Plaintiff testified that he did not know the exact mental state of his mother on May 24, 2010, he has testified to her general mental conditions which would affect her ability to make fiscal decisions, further

-6-

those conditions would affect her ability to understand the effects of signing the "POD" on her account.

18. Cross-Plaintiff testified that William Dean Turley acquired a position of trust when working with their mother on his father's estate. The testimony in the respective depositions demonstrates that he, even though he was a co-executor, resided in California, and much of the estate contact was carried out by William Dean Turley. It is noteworthy that William Dean Turley in his deposition testified that "we" closed the father's account and transferred it to Regions Bank, which was William Dean Turleys' bank clearly, by this time, William Dean Turley has assumed a dominant role in making financial decisions for his mother, obtained a position of trust which allowed her to be unduly influenced.

19. Tim Turley testified that prior distribution of cash had been on equal basis for all four children. This was also acknowledged by William Dean Turley. It is asserted by Cross-Defendant that this is the only basis for his allegations; however, this fact coupled with the fact that William Dean Turley assumed a position of trust to dominate his mothers financial dealings (as set out in paragraph 18 herein[)]; that she had mental issues, including bi-polar disorder, noting that William Dean Turley acknowledged narrowing parameters of good health; that she was on an extensive number of medications; that this appears to be the only bank transaction in which William Dean Turley was involved; that he did not advise any of his brothers of the trip; that William Dean Turley was not the primary caretaker for his mother, in that Jon Turley provided for her care would demonstrate that even without further proof there are issues for the trier of fact with respect to undue influence, fraud, and lack of capacity.

20. In his statement of facts, William Dean Turley proposed self-serving statements in paragraph 9 and 15, 16, 17, 18, and 20. These are statements which are in response to the allegations made by his brother Tim Turley in the complaint. This contradictory statement are at issue and should be resolved at trial. In essence, they are disputed factual allegations.

(Citation omitted). William Dean Turley's motion for summary judgment was heard, and in January 2019, the Trial Court entered an order granting the motion. In its order, the Trial Court stated, as pertinent:

> In his deposition testimony Tim Turley acknowledged that he had no knowledge with regard to the mental state of Helen D. Turley when she designated William Dean Turley as a pay on death beneficiary to her account on May 24th, 2010. He goes on to state that he does not know if Helen D. Turley was lucid at this time and has made no efforts to find out.

Tim Turley testified that he was aware that in the 1990's his mother had received care for depression and bi-polar disorder. However this [is] not sufficient proof to conclude that at the time the designation was made, Helen D. Turley did not have the mental capacity to make such a decision on May 24th, 2010. Again the court points to the finding in *Rawlings* to support this conclusion, "it is not enough simply to show that a person suffers from a diagnosis such as depression or senile dementia." *Rawlings*.

This court therefore concludes that there is no evidence before this court that could in any way warrant a finding that Helen D. Turley lacked the necessary mental capacity to legally effectuate the change made to her own bank account placing William Dean Turley as a Pay On Death Beneficiary to her account on or about May 24th, 2010, and hereby grants the Defendant/Cross-Plaintiff, William Dean Turley's Motion for Summary Judgment on the issue of the alleged lack of mental capacity.

***

In this case the Cross-Defendant, Tim Turley by and through counsel has failed to show any evidence of a confidential relationship between William Dean Turley and Helen D. Turley such that William Dean Turley exercised any dominion or control over Helen D. Turley. There has been no proof brought before this court to suggest that any relationship existed that would establish the necessary confidential relationship per se. When asked in his deposition if he was aware of his mom (*Helen D. Turley*) ever having designated Dean (*William D. Turley*) as her attorney in fact under any power of attorney of any kind, Tim Turley responded no. The only relationship other than that of mother and son that the Cross-Defendant, Tim Turley points to in order to show a confidential relationship is that William D. Turley and Tim Turley were co-executors of their father's estate and that as part of those duties he wrote checks distributing funds from the estate to not only Helen D. Turley but to children [as] well including William D. Turley and Tim Turley. This is not in any way proof of a confidential relationship between William D. Turley and Helen D. Turley and for all intents and purpose is separate and unrelated to the issues at hand dealing with Helen D. Turley and her estate.

At the time of this designation of a pay on death beneficiary, Helen D. Turley lived at home with a son; however, it was not William D. Turley but rather a third brother, Jon Turley who lived with his mother and assisted in her . . . day to day care. It was not William D. Turley that had this type of fiduciary relationship with his mother, but rather Jon Turley.

-8-

Having failed to provide proof of a confidential relationship per se the court must then look at the relationship between William D. Turley and Helen D. Turley to determine if there was dominion or control exercised over Helen D. Turley by William D. Turley, whether there is a showing [of] the mental deterioration or senility of Helen D. Turley, was there fraud or duress, or any other condition which would tend to establish that the free agency of Helen D. Turley was destroyed and that the will of William D. Turley was substituted. *Kelley v. Allen 558 S.W.2d 845, 848 (Tenn. 1977)*.

\*\*\*

The only fact that Tim Turley is relying on in making these allegations is that we are dealing with a substantial amount of money and that this action of designating a pay on death beneficiary is not something that his mother had done previous to May 24th, 2010 or again after May 24th, 2010 and the fact that William D. Turley was at the bank at the time.

\*\*\*

[T]here is not sufficient evidence before this court that either a confidential relationship existed between William Turley or that dominion or control was
exercised over Helen D. Turley by William D. Turley; that there was a showing [of] the mental deterioration or senility of Helen D. Turley; that there was fraud or duress, or any other condition which would tend to establish that the free agency of Helen D. Turley was destroyed and that the will of William D. Turley was substituted and the Motion for Summary Judgment is granted on the issue of undue influence and fraud.

\*\*\*

4. William D. Turley is hereby awarded the funds which he is entitled to as the pay on death beneficiary of his mother's account. Those funds are currently being held by the clerk and master, and he is hereby ordered to release those funds to William D. Turley.

5. William D. Turley is also awarded pre-judgment interest, together with his reasonable attorney fees and costs, to be paid by Tim Turley. William Turley is hereby ordered to provide to the court an Affidavit of said fees and cost for the cost review and to be reduced to a judgment of a specific amount.

6. This concludes all pending matters in this cause of action and is the Final Order in this matter for which execution may issue, the court

finding that there is no just reason for delay and further render its express direction for entry of judgment as to the same, as provided by Tenn. R. Civ. P. 54.02, reserving only for determination the amounts of prejudgment interest and attorney fees and costs.

In February 2019, William Dean Turley filed his Motion for Judgment for Reasonable and Necessary Attorney Fees and Expenses. In April 2019, the Trial Court awarded William Dean Turley prejudgment interest, as well as $13,023.20 in attorney's fees and expenses. No rationale for the attorney's fees and expenses was articulated. The Estate timely appealed.

## **Discussion**

Although not stated exactly as such, the Estate raises the following two issues on appeal: 1) whether the Trial Court erred in granting summary judgment to William Dean Turley on the issues of undue influence, fraud, and/or lack of mental competency in the procurement of a payable-on-death bank account of Decedent naming William Dean Turley as sole beneficiary; and, 2) whether the Trial Court erred in awarding attorney's fees and expenses to William Dean Turley without a contractual, statutory, or common law basis. William Dean Turley presents his own separate issue of whether his cross-claims for conversion, punitive and exemplary damages, willful and knowing and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Tennessee Consumer Protection Act, and for attorney's fees and expenses, remain pending and should be remanded for adjudication by the Trial Court. Finally, Tim Turley has filed a brief as an appellant arguing that, should this Court affirm the award of attorney's fees and expenses, the fees and expenses should be assessed against the Estate rather than him individually.

As our Supreme Court has instructed regarding the standard of review on motions for summary judgment:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of*

*Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

\*\*\*

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence

that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC,* 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

We first address whether the Trial Court erred in granting summary judgment to William Dean Turley on the issues of undue influence, fraud, and/or lack of mental competency in the procurement of a payable-on-death bank account of Decedent naming William Dean Turley as sole beneficiary. The Estate contends that William Dean Turley had a confidential relationship with Decedent and that he exercised undue influence over her. Our Supreme Court has discussed the meaning of a confidential relationship:

> In Tennessee, for example, where there is a "confidential relationship, followed by a transaction wherein the dominant party receives a benefit from the other party, a presumption of undue influence arises, that may be rebutted only by clear and convincing evidence of the fairness of the transaction." *Matlock v. Simpson*, 902 S.W.2d 384, 386 (Tenn. 1995) (citations omitted). A confidential relationship is any relationship which gives one person dominion and control over another. *See Mitchell v. Smith*, 779 S.W.2d 384, 389 (Tenn. Ct. App. 1989).
>
> The burden of proof regarding a confidential relationship rests upon the party claiming the existence of such a relationship. *See Brown v. Weik*, 725 S.W.2d 938, 945 (Tenn. Ct. App. 1983). Once a confidential relationship has been shown and a presumption of undue influence arises, the burden shifts to the dominant party to rebut the presumption by proving the fairness of the transaction by clear and convincing evidence. *Matlock v. Simpson*, 902 S.W.2d at 386; *see Gordon v. Thornton*, 584 S.W.2d 655, 658 (Tenn. Ct. App. 1979). To prove the fairness of the transaction, the dominant party may show that the weaker party received independent advice before engaging in the transaction that benefitted the dominant party. *See Hogan v. Cooper*, 619 S.W.2d 516, 519 (Tenn. 1981); *see also Richmond v. Christian*, 555 S.W.2d 105, 107-08 (Tenn. 1977) (proof that the donor received independent advice respecting the consequences and advisability of the gift) (citations omitted).

*Childress v. Currie*, 74 S.W.3d 324, 328 (Tenn. 2002).

In *Childress* our Supreme Court cited to *Mitchell v. Smith*, a case wherein this Court explained:

Confidential relationships can assume a variety of forms, and thus the courts have been hesitant to define precisely what a confidential relationship is. *Robinson v. Robinson*, 517 S.W.2d 202, 206 (Tenn. Ct. App. 1974). In general terms, it is any relationship which gives one person dominion and control over another. *Kelly v. Allen*, 558 S.W.2d 845, 848 (Tenn. 1977); *Turner v. Leathers*, 191 Tenn. 292, 298, 232 S.W.2d 269, 271 (1950); *Roberts v. Chase*, 25 Tenn. App. 636, 650, 166 S.W.2d 641, 650 (1942). It is not merely a relationship of mutual trust and confidence, but rather it is one

> where confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with ability, because of that confidence, to influence and exercise dominion and control over the weaker or dominated party.

*Mitchell v. Smith*, 779 S.W.2d 384, 389 (Tenn. Ct. App. 1989) (quoting *Iacometti v. Frassinelli*, 494 S.W.2d 496, 499 (Tenn. Ct. App. 1973)). "A normal relationship between a mentally competent parent and an adult child is not per se a confidential relationship and it raises no presumption of invalidity of the transaction." *Bills v. Lindsay*, 909 S.W.2d 434, 440 (Tenn. Ct. App. 1993).

In *Delapp v. Pratt,* we discussed what constitutes evidence of undue influence:

> It is well settled in Tennessee "that the existence of a confidential relationship, followed by a transaction wherein the dominant party receives a benefit from the other party, a presumption of undue influence arises, that may be rebutted only by clear and convincing evidence of the fairness of the transaction." *Matlock v. Simpson*, 902 S.W.2d 384, 386 (Tenn. 1995). However, as this Court discussed in *In re: Estate of Maddox*:

>> Proof of the existence of a confidential relationship, by itself, will not be sufficient to invalidate a will. It is not the relationship that concerns the courts but rather the abuse of the relationship. Proof of the existence of a confidential relationship must be coupled with evidence of one or more other suspicious circumstances that give rise to a presumption of undue influence.

*In re: Estate of Maddox*, 60 S.W.3d 84, 89 (Tenn. Ct. App. 2001) (citations omitted).

It is rare to find direct evidence of undue influence. *Id*. at 88. Usually, to prove undue influence, one "must prove the existence of suspicious circumstances warranting the conclusion that the person allegedly influenced did not act freely and independently." *Id*. "The suspicious circumstances most frequently relied upon to establish undue influence are: (1) the existence of a confidential relationship between the testator and the beneficiary, (2) the testator's physical or mental deterioration, and (3) the beneficiary's active involvement in procuring the will." *Id*. at 89. Some other recognized suspicious circumstances are:

> (1) secrecy concerning the will's existence; (2) the testator's advanced age; (3) the lack of independent advice in preparing the will; (4) the testator's illiteracy or blindness; (5) the unjust or unnatural nature of the will's terms; (6) the testator being in an emotionally distraught state; (7) discrepancies between the will and the testator's expressed intentions; and (8) fraud or duress directed toward the testator.

> *Mitchell v. Smith*, 779 S.W.2d 384, 388 (Tenn. Ct. App. 1989). "The courts have refrained from prescribing the type or number of suspicious circumstances that will warrant invalidating a will on the grounds of undue influence." *Id*.

*Delapp v. Pratt*, 152 S.W.3d 530, 540-41 (Tenn. Ct. App. 2004).

In the present case, the Estate cites several pieces of evidence in support of its contention that a confidential relationship existed between Decedent and William Dean Turley and that suspicious circumstances surrounded the latter's designation as beneficiary. The Estate cites the fact that William Dean Turley served as co-executor of his late father's estate. It is the Estate's position that William Dean Turley persuaded Decedent to distribute money from his father's estate to the four brothers. What relevance this has to Decedent choosing a payable-on-death beneficiary on her Y-12 FCU account is not immediately clear. Nevertheless, continuing its argument, the Estate describes the May 2010 "secret trip" to Y-12 FCU as suspicious. The Estate asserts that on previous occasions, Decedent had a practice of giving money to her sons in equal portions. Curiously, the Estate also emphasizes that William Dean Turley received significant help from his parents in the past, a fact tending to undermine rather than bolster its argument that Decedent was unlikely to have given William Dean Turley more money than his brothers. With respect to Decedent's mental competency, the Estate points out that Decedent had a history of mental illness dating back to the 1990s, and that she was on an extensive regimen of medicines.

For his part, William Dean Turley stated in his filings that he was unaware at the time that Decedent had designated him sole payable-on-death beneficiary on the Y-12 FCU account because he was somewhere else when Decedent was conducting this business. He asserted that he did not learn "until early in October, 2016, when he found an envelope with an account statement in it with his mother's handwriting on the front saying that it was important and 'for Dean.'" Indeed, we observe that if William Dean Turley fraudulently caused Decedent to name him beneficiary on her Y-12 FCU account, he did not act on his scheme with much alacrity, and instead waited years before doing anything to secure the funds. As to Decedent's mental health, William Dean Turley stated that "[i]n May of 2010, their mother was cogent and looking for interesting and meaningful things to do" and that "when he took her on the bank visits on May 24, 2010, she was in good condition. . . ." Under these facts, Decedent exercised her own free will in designating William Dean Turley payable-on-death beneficiary on the Y-12 FCU account, and without his knowledge.

Under the *Rye* standard, it was incumbent upon the non-moving parties to point to facts in the record creating a genuine issue of material fact for trial in order for this matter to proceed. We agree with the Trial Court that no such genuine issue of material fact has been shown. The Estate does not purport to have any proof as to what Decedent's mental state or level of competency was on May 24, 2010 when she designated William Dean Turley her payable-on-death beneficiary. The fact that Decedent had mental health problems in the 1990s does not mean she was incompetent on the material date of May 24, 2010. We may not presume Decedent was incompetent simply because she dealt with mental illness at other, non-material times in her life. On the contrary, as this Court has stated in the context of competency to enter into contracts, "[a]ll adults are presumed to be competent. . . ." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 297 (Tenn. Ct. App. 2001). The Estate has failed to create a triable issue as to Decedent's competence at the relevant time.

With regard to a purported confidential relationship between William Dean Turley and Decedent, the Estate has presented no evidence of one. Indeed, Tim Turley's knowledge about William Dean Turley's relationship with Decedent was murky, at best. In his deposition, Tim Turley testified:

Q. And as far as Dean's relationship of trust with your mother, do you think that was a normal type of relationship of trust between a parent and a child?
A. I didn't know about his relationship with mom.
Q. So you don't know what it was.
A. I live out of state so I really didn't know.
Q. Okay. You were living in California.

A. California.

Q. And Dean lives in, where, Grainger County?  Or Union County?

A. Union County.  And Knoxville I guess.

***

Q. Okay.  What I'm really wanting to know is when you've alleged here in your pleadings that Dean's acts were fraudulent in connection with getting Exhibit one done, do you know of anything he did that you can point to specifically that was fraudulent in that connection?

A. The paperwork says the POD was executed that day.  So the question is, you're asking me as I understand he influenced her, and I've alleged he did.  And if someone were to persuade somebody to give them a hundred and twenty-eight thousand dollars through undue influence I would call that fraudulent.

Q. Okay.

A. Because of the sum of money.  Quite a substantial amount of money.

Q. And you believe he did that?

A. I do.

Q. You don't think it was her idea?

A. I don't think it was her idea alone to do that.

Q. That he helped put that idea in her head, correct?

A. Right.  And I'll tell you why.

Q. Okay.

A. She made other distributions that were equal amounts a few times.

Q. Okay.  Are you talking about out of your dad's estate?

A. Her personal cash and assets.

Respectfully, this will not suffice.  Tim Turley's personal incredulity that Decedent would, while mentally competent, give William Dean Turley a large sum of money does not create a genuine issue of material fact for trial.  While an uncharacteristic decision might constitute evidence of undue influence, a competent adult like Decedent could decide in her own judgment to provide more money for one child over another, even if she had given equally in the past.  Here, it is not even clear that the distributions were equal in the past, because the Estate makes an issue of William Dean Turley benefiting from his parents' aid over the years.  In that sense, Decedent's action fits squarely with a pattern of parents helping a son who, for whatever reason, they believed needed more help than their other children.

The Estate has failed to show that William Dean Turley held any control or dominion over Decedent.  Decedent lived with and was cared for by another brother, not

-16-

William Dean Turley. There is no evidence that William Dean Turley ever exercised power-of-attorney for Decedent, or acted in some comparable role. All in all, there are no suspicious circumstances on which this case could proceed to trial.

Based on the evidence submitted at the summary judgment stage, there are no grounds from which a reasonable trier of fact could conclude, first, that William Dean Turley's relationship with Decedent was anything other than a normal mother-son relationship, or two, that Decedent was incompetent on the day she designated her son William Dean Turley payable-on-death beneficiary on her Y-12 FCU account. This being so, we affirm the Trial Court in its grant of summary judgment to William Dean Turley.

We next address whether the Trial Court erred in awarding attorney's fees and expenses to William Dean Turley without a contractual, statutory, or common law basis. This overlaps with Tim Turley's issue raised in his individual capacity. In *Cracker Barrel Old Country Store, Inc. v. Epperson*, our Supreme Court explained the American Rule:

> Tennessee, like most jurisdictions, adheres to the "American rule" for award of attorney fees. *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998); *Pullman Standard, Inc. v. Abex Corp.*, 693 S.W.2d 336, 338 (Tenn. 1985). Under the American rule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case. *Taylor*, 158 S.W.3d at 359; *John Kohl*, 977 S.W.2d at 534.

*Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (footnote omitted).

The Estate's argument on this issue is simple. Since the Trial Court provided no legal justification whatsoever for the attorney's fees and expenses, its award of attorney's fees and expenses should be reversed in view of the American Rule. Tim Turley, individually, agrees but argues further that, if attorney's fees and expenses are upheld, they should be assessed against the Estate because at all material times he was acting in his capacity as Executor of the Estate.

William Dean Turley does not dispute that the Trial Court's order on attorney's fees and expenses lacks explicit legal justification. However, he argues that three grounds exist upon which we may find a legal justification to affirm the attorney's fees

and expenses.[2]  First, he states that Tim Turley failed to respond to requests for admissions in a timely manner.  Second, he cites the Tennessee Consumer Protection Act's provision for attorney's fees, even though the Trial Court never ruled on this particular claim of his.  Third, he argues in his brief thusly:

> [T]here is authority for recovery of attorney fees in an interpleader action where the financial institution is entitled to or obtains recovery of its fees based upon its agreement with its customer and upon equitable principles. Based upon the doctrine of mutuality of remedy, a prevailing contestant to the interpleaded fund should be able to recover attorney fees from a co-party disputing their claim of ownership, to the same extent as the interpleading bank, credit union or other financial institution.

(Footnote omitted).

We need not decide whether the Estate or Tim Turley, individually, is liable for attorney's fees and expenses because the issue is resolved by application of the American Rule.  There is no hint from the record as to why the Trial Court awarded attorney's fees and expenses to William Dean Turley other than that he asked for them and won the case. Under the American Rule, an award of attorney's fees requires some recognized legal basis, such as a statute or contractual provision.  The attorney's fees and expenses awarded here have no such basis.  We decline William Dean Turley's request to retroactively justify an award of attorney's fees and expenses that was granted without any stated justification whatsoever.  We, therefore, reverse the Trial Court's award of attorney's fees and expenses to William Dean Turley.  We also decline to award any attorney's fees incurred on appeal, by any party.

The final issue we address is William Dean Turley's separate issue of whether his cross-claims for conversion, punitive and exemplary damages, willful and knowing and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Tennessee Consumer Protection Act, and for attorney's fees and expenses, remain pending and should be remanded for adjudication by the Trial Court.  These claims are not before us.  Based on this record, they never were adjudicated below.[3]  We make no ruling with respect to these claims.  The issue is superfluous.  In summary, except for the award to William Dean Turley of attorney's fees and expenses which we reverse for

---

[2] A fourth ground, that Tim Turley waived the issue because he failed to file a notice of appeal or an appellate brief and that he, rather than the Estate, was the one liable for the attorney's fees, no longer is relevant because we granted Tim Turley's request to late-file an appellant's brief addressing this very issue.

[3] The judgment on appeal before us was a final judgment pursuant to Tenn. R. Civ. P. 54.02.

lacking a specific legal justification in contravention of the American Rule, we affirm the judgment of the Trial Court.

## **Conclusion**

The judgment of the Trial Court is affirmed, in part, and reversed, in part, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed one-half equally between the Appellant, the Estate of Helen D. Turley, deceased, and its surety, if any, and the Appellee, William Dean Turley.

_____
D. MICHAEL SWINEY, CHIEF JUDGE